UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:19-CR-63-TBR

UNITED STATES OF AMERICA,                                                                PLAINTIFF

v.

MONTRAIL C. FORTE,                                                                       DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Montrail C. Forte's Motion to Suppress. [DN 23]. The Government responded, [DN 24], and Defendant replied, [DN 28]. This matter is ripe for adjudication. For the reasons set forth herein, Defendant's motion, [DN 23], is DENIED.

### BACKGROUND

On February 25, 2019, the Government alleges that an undercover detective and confidential informant arranged to purchase methamphetamine from Defendant at his residence at 102 Boxwood Drive in Hopkinsville, Kentucky. [DN 24 at 79]. Defendant advised the confidential informant that he would leave the drugs in the glove box of his black Pontiac parked outside of the residence. *Id.* However, when the undercover detective and confidential informant arrived at the residence, Defendant walked from the residence and entered their vehicle. *Id.* Next, he provided methamphetamine and marijuana to the confidential informant in exchange for $260. *Id.* The Government claims that the events were captured on audio/video surveillance and personally observed by the undercover detective. *Id.*

On February 26, 2019, Troy Gibson of the Pennyrile Narcotics Task Force applied for a search warrant of Defendant's residence. [DN 23-1 at 67]. He filed the following affidavit in support of the warrant:

1

> On February 25, 2019, at approximately 13:30, Affiant received information from/observed: The affiant and Detective [redacted] met with a reliable confidential informant and arranged to purchase methamphetamine from Montrail Forte. The CI was furnished with $260 and a camera to record the transaction. [Detective] drove the CI to the location at 102 Boxwood Drive. Forte texted that he would leave the dope in his black Pontiac that was parked in front of his residence. However, when [Detective] and CI got there, Forte actually came to the car they were in. They did see the black Pontiac parked in front of the residence.
>
> Acting on the information received, Affiant conducted the following independent investigation: Detective [redacted] witnessed Forte come from 102 Boxwood to the undercover vehicle, he got into the vehicle with the CI and [Detective]. Detective [redacted] advised the transaction took place as he watched Forte deliver a baggie of methamphetamine and marijuana for two hundred and sixty dollars. After the transaction, [Detective] advised he filmed Forte walking back towards his residence and got into another vehicle. There is video of the transaction from camera provided to the CI. There was approximately 14 grams of methamphetamine placed into evidence.

*Id.* at 67–68.

The search warrant was issued and executed. [DN 24 at 79]. Detectives located 178.42 grams of methamphetamine, $600, and drug paraphernalia inside the Boxwood residence. *Id.* During the search, Defendant admitted to obtaining a half-pound of methamphetamine two times a week. *Id.* Defendant has now filed a motion to suppress the evidence and statements obtained as a result of the search on the basis that the search warrant was issued in violation of the Fourth Amendment. [DN 23].

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Consistent with this principle, constitutional jurisprudence provides "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (quoting *Katz v.*

*United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). In order to further protect individuals' privacy interests, the Fourth Amendment demands that search warrants, when issued, are only provided upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable cause justifying the issuance of such a search warrant exists where, taking the totality of the circumstances, the affidavit supporting the warrant provides the issuant magistrate judge with a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of illegal activity will be found in a particular place.'" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238). Moreover, in order "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). This requires "a nexus between the place to be searched and the evidence sought." *Id.*

The underlying affidavit which supports the search warrant must actually "contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)). "The supporting facts in an affidavit need not be based on direct knowledge and observations of the affiant, but may come from hearsay information supplied by an informant." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 269-70, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Ultimately, the decision of the magistrate judge who initially issued the warrant will be reversed by this Court only if her "determinations were arbitrarily exercised." *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).

This Circuit has further interpreted *Gates*, instructing that a court, in reviewing the sufficiency of the evidence supporting probable cause, is "limited to examining the information

contained within the four corners of the affidavit" in light of the totality of the circumstances. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). In order to deter future violations of the Fourth Amendment, the typical remedy for searches made with a defective warrant is suppression. *See United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007). Notably though, suppression is not always warranted and, depending upon the circumstances, evidence may be saved from suppression where an officer acts in objectively good faith in executing an otherwise defective warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). This means that, in situations where "evidence [is] obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of suppression] . . . cannot justify the substantial costs of exclusion." *Id.* In such a case, although probable cause is lacking, the fruits of the search need not be suppressed.

## DISCUSSION

Defendant argues that the search warrant was issued in violation of the Fourth Amendment because the facts contained in the affidavit in support of the warrant were insufficient to establish probable cause. [DN 23 at 63]. More specifically, Defendant asserts that there is no nexus between the Boxwood address and the drug evidence to be seized. In support of this position, Defendant relies primarily on *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), in which the Sixth Circuit dedicated significant discussion to the nexus requirement. The Court began its inquiry by noting that "the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *Id.* at 382 (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Generally, "[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not

4

'vague' or 'generalized.'" *Id.* (citing *Carpenter*, 360 F.3d at 595). Ultimately, "whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented." *Id.* (internal citations omitted). For example, in the following cases, the nexus between the place to be searched and things to be seized was too vague or generalized to support a search warrant:

> In *Carpenter,* the search warrant affidavit stated only that an officer conducting helicopter surveillance had observed numerous marijuana plants growing near the residence and a road that connected the residence to the plants. 360 F.3d at 593. Although the facts in the affidavit suggested some connection between the marijuana plants and the residence, we held that they were "too vague, generalized, and insubstantial to establish probable cause." *Id.* at 595. We have similarly concluded that a search warrant affidavit failed to "establish the requisite nexus between the place to be searched and the evidence to be sought" where it stated no more than that the defendant resided at the address and was arrested there on a non-drug offense with a quantity of crack cocaine on his person. *United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006). We also found the nexus insufficient in a case where an informant actually identified the defendant's residence as the site of a drug operation. *See United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009). The police had not established the informant's reliability, we explained, and furthermore, the affidavit did not "assert that the informant had been inside [the defendant's] apartment, that he had ever seen drugs or other evidence inside [the defendant's] apartment, or that he had seen any evidence of a crime other than the one that occurred when [the defendant] allegedly sold him drugs." *Id.* at 390. "Without such an assertion," we concluded, "the affidavit fails to establish the necessary nexus between the place to be searched and the evidence sought." *Id.* (internal quotation marks omitted).

*Id.* In *Brown*, the search warrant affidavit provided that the suspect's car, which was registered to the suspect at the residence in question, was parked outside of another known drug dealer's home and tested positive for narcotics during a canine search. *Id.* at 382–83. The Court concluded that "[a]lthough these facts supported the search of Brown's car, they did not establish a fair probability that evidence of drug trafficking would be found at his residence." *Id.* "A more direct connection was required, such as surveillance indicating that Brown had used the car to transport heroin from his home." *Id.* Additionally, the Court noted "the search warrant affidavit contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any

5

suspicious activity had taken place there," nor did the "affidavit did not suggest that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at Brown's home, or that the recorded telephone conversations linked drug trafficking to Brown's residence." *Id.* at 382. Finally, the Sixth Circuit emphasized that it has "never held, [] that a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'" *Id.* (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)). Instead, the affidavit must provide "reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.*

In this case, the affidavit provides that the affiant and a detective met with a reliable confidential informant and arranged to purchase methamphetamine from Defendant. Defendant indicated to the confidential informant that he would leave the narcotics in his car in front of his residence. However, when the detective and the confidential informant arrived at the Boxwood address, the detective witnessed Defendant come from his residence and enter the undercover vehicle. The detective then observed Defendant provide methamphetamine and marijuana in exchange for $260. Afterwards, the detective witnessed Defendant walk back toward the residence and get into another vehicle. The affidavit also indicates that the entire transaction was recorded.

Defendant argues there is no nexus between the Boxwood address and drug evidence to be seized. [DN 23 at 65]. Specifically, he asserts there is no indication in the affidavit that the drugs used during the controlled buy came from the residence, nor does the undercover officer aver that he witnessed Defendant leave the residence with the drugs or go back into the residence after the sale. *Id.* Moreover, Defendant claims that "[l]ike *Brown,* there is no information that drug

6

trafficking was occurring out of the residence; that drugs were being stashed there or that surveillance revealed that drug trafficking was occurring there." *Id.*

The Court disagrees. Not only did the affidavit indicate that law enforcement used a reliable, confidential informant to conduct a controlled buy outside Defendant's residence, it asserted that a detective witnessed and recorded the transaction first-hand. Moreover, the affidavit provided that the detective witnessed Defendant coming from his residence with the illicit narcotics immediately before the sale took place. Thus, a reviewing judge could conclude that Defendant distributed narcotics from his home and Defendant used his home to store narcotics. Although the affidavit lacks additional information confirming that Defendant resided at the Boxwood address or his criminal history, the totality of the circumstances presented establishes a direct connection between the Boxwood residence and evidence of criminal activity. Accordingly, the Court finds that the warrant was support by probable cause.

Even if the search warrant affidavit failed to establish a direct connection between the residence and criminal activity, the good faith exception applies. When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). However, courts should refrain from suppressing "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). Importantly, though, "this good-faith exception to the exclusionary rule does not apply in circumstances where 'the officer will have no reasonable grounds for believing that the warrant was properly issued.'" *Carpenter*, 360 F.3d at 595 (citing *Leon*, 468 U.S. at 923). "Thus, an officer would not 'manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in

7

its existence entirely unreasonable.'" *Id.* (citing *Leon*, 468 U.S. at 923). Crucially, the good faith exception requires a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause." *Id.*

The Sixth Circuit has found that, where "the affidavit contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched," this is sufficient "to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *Id.* at 596. The Government argues that there is a minimally sufficient nexus between illegal activity and the Boxwood residence because the detective observed Defendant coming from the residence prior to participating in a controlled drug transaction in front of the home. [DN 24 at 83]. Thus, the Government claims, "the affidavit contains sufficient facts that, 'when read in a common-sense, practical manner, establishes a minimally sufficient nexus that would support an officer's reliance on the search warrant.'" *Id.* (quoting *Gates*, 462 U.S. at 238–39).

In his reply brief, Defendant relies heavily on the recent Sixth Circuit opinion *United States v. Ward*, 967 F.3d 550 (6th Cir. 2020). In that case, a man was found dead with a syringe in his hand with his cell phone located near his body. *Id.* Text messages on the cell phone between the man and an individual named Joe Ward indicated that Ward had brought narcotics to the hotel room where the individual was found dead. *Id.* Police traced Ward's telephone number to a residence in Columbus, Ohio. *Id.* Six months later, they conducted a trash pull at the residence and found marihuana and "a plastic bag that appeared to contain illicit drugs at one time." *Id.* Finally, officers discovered that Ward had an extensive criminal history including drug trafficking. *Id.* Based on this information, a judge issued a search warrant for Ward's residence. *Id.*

8

On appeal, the Sixth Circuit assumed, without deciding, that there was not probable cause to issue the search warrant. *Id.* The only issue before the Court was "whether the search of Ward's home can be saved by the good faith exception to the exclusionary rule." *Id.* Ultimately, the Court concluded that the good faith exception did not apply because the affidavit failed to establish a minimally sufficient nexus between drug-trafficking and Ward's residence. *Id.* In making this decision, the Court emphasized that although the affidavit indicated that Ward had drugs and weapons charges, it did not provide when the offenses occurred or whether they resulted in convictions. *Id.* Without more information, the Court concluded that Ward's charges were not probative of whether he used his residence for drug trafficking. *Id.* Additionally, the lone trash pull, six months after the individual was found dead in the hotel room, distinguished this case from trash pulls in other Sixth Circuit decisions in which the good faith exception applied. *Id.* The Court noted that "[p]erhaps it would be different if law enforcement here conducted the trash pull earlier, or if they searched Ward's trash more than once." *Id.*

Additionally, Defendant relies on *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006). In that case, a search warrant was issued for a residence after "one modified controlled buy, in which a confidential informant gave pre-recorded buy money to an unidentified female, who was followed to the address in question, observed entering and leaving, and who later delivered a baggie of crack cocaine to the confidential informant" *Id.* at 486. While the Sixth Circuit noted that the affidavit did not include further surveillance or additional controlled buys, it primarily emphasized that the "affidavit offers no clue as to when this single controlled buy took place." *Id.* Since the affidavit failed to indicate at what point the controlled buy occurred, the Court found that the warrant as invalid on staleness grounds. *Id.* at 487. Moreover, "[f]or the reasons discussed [] with respect to the relationship of probable cause to staleness," the Court concluded that the

good faith exception did not apply. *Id.* The controlled buy was "not dated, and the affidavit contains no indication of ongoing investigation, subsequent or previous controlled buys, or further surveillance of the address or the female supplier." *Id.* at 488. While any of these factors may have served to establish that the "house was the site of an ongoing criminal enterprise, or ground the undated controlled buy within a finite period of investigation," without such elements, the "affidavit is patently insufficient." *Id.* at 489.

Defendants argues that *Ward* and *Hython* provide that "an isolated buy does not establish a sufficient nexus between a defendant's residence and drug-dealing activity where there is no other evidence of large scale continuing drug operations at the residence." [DN 28 at 101]. Since there is nothing in the affidavit to suggest law enforcement officers conducted further surveillance or controlled buys at the Boxwood address, nor was there evidence of heavy foot traffic or deliveries, Defendant asserts that an officer executing the search warrant "could not, in good faith, believe probably cause exists to search the residence." *Id.*

The search warrant in this case was issued under different circumstances than those in *Ward* and *Hython*. Investigators in this case did not include undated information regarding Defendant's criminal history, nor did they conduct a trash pull several months after suspecting the defendant was engaged in criminal activity. Furthermore, Defendant has not raised a staleness issue given that the affidavit provided that the controlled buy occurred one day before the search warrant application was submitted. Indeed, this case has more in common with *United States v. White*, in which the Sixth Circuit applied the good faith exception. 874 F.3d 490, 497 (6th Cir. 2017). There, investigators received a tip that the defendant was selling drugs from his residence. *Id.* They investigated the suspect's criminal history and connection to the residence and conducted a controlled buy on the premises. *Id.* The Sixth Circuit found that the most critical factor in

10

determining whether there was a minimal nexus between drug activity and the residence was the controlled buy on the premises. *Id.* at 497–98. "By corroborating key components of the informant's tip—that defendant was personally distributing the specific kind of narcotic (marijuana) at the specific location (the premises of 196 Turner Lane) alleged by the informant—Williams' affidavit provided a concrete factual link between defendant, his criminal activity, and the residence." *Id.* at 498. Similarly, in this case, the affidavit provides that a detective traveled with a confidential informant to Defendant's residence in order to conduct a controlled buy. The detective witnessed and recorded Defendant personally come from the residence, enter their vehicle parked at the residence, and exchange methamphetamine and marijuana with the confidential informant for $260. Thus, the affidavit contains a minimally sufficient nexus between the illegal activity and the Boxwood residence.

In sum, the Court finds that the warrant is valid on its face, and the affidavit in support of it provides sufficient facts to establish probable cause for the warrant's issuance. The issuing judge made a "practical, common-sense judgment call[]" required for "a probable cause determination." *Gates*, 462 U.S. at 244. Moreover, even if the facts laid out in the affidavit, taken together, were insufficient to rise to the level of probable cause, the good faith exception would apply here. This is because there was a minimally sufficient nexus between the illegal activity and the place to be searched, such that an officer would have had reasonable grounds to rely on the warrant and the affidavit in conducting the search of the Boxwood residence. Defendant's motion to suppress is DENIED.

## CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED:** Defendant's motion, [DN 23], is **DENIED**.

**IT IS SO ORDERED**.

*Thomas B. Russell* (signature)

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 24, 2020

CC: Attorneys of Record

12